IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RICHARD D.,

        Plaintiff,                    Civil Action No.
                                                5:19-CV-0188 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OSTERHOUT DISABILTY LAW        KARL E. OSTERHOUT, ESQ.
521 Cedar Way, Suite 200            HANNALORE MERRITT, ESQ.
Oakmont, PA 15139                    PAUL B. EAGLIN, ESQ.

FOR DEFENDANT

HON. GRANT C. JAQUITH            MONIKA K. CRAWFORD, ESQ.
United States Attorney                Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on March 12, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: March 16, 2020
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT D.,

                                        Plaintiff,

-v-                                     5:19-CV-188

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
March 12, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    OSTERHOUT DISIBILITY LAW
    521 Cedar Way
    Suite 200
    Oakmont, Pennsylvania 15139
    BY: **HANNALORE B. MERRITT, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **MONIKA K. CRAWFORD, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

              (In chambers, counsel present by telephone.  Time noted:  11:36 a.m.)

              THE COURT:  Plaintiff has commenced this proceeding pursuant to 42, United States Code, Sections 405(g) and 1383(c)(3) to challenge a determination by the Commissioner of Social Security denying plaintiff's application for benefits and finding that he was not disabled at the relevant times.

              The background is as follows:  Plaintiff was born in August of 1965.  He is currently 54 years old.  He was 47 years of age at the time of the alleged onset of his disability on January 1, 2013.  Plaintiff is approximately 5'9" in height and weighs approximately 190 pounds.  He lives in a trailer alone with his 90-pound German Shepherd in Pennellville, New York.  He has a truck driving license.  In terms of work, plaintiff has not worked since September of 2010.  He held various truck driving positions from January 2000 through September 2010.  Plaintiff suffered an all-terrain vehicle accident in 2006.

              Physically, he suffers from several diagnosed conditions:  Neck pain, including in his shoulders; lumbar pain, bad knees; prickles in his legs; COPD; tingling and numbness in his hands; Raynaud's phenomenon; a clotting disorder; peripheral vascular disease; inflammatory arthritis; and undifferentiated connective tissue disease, which I will refer to as UTCD.  I note that he had a heart attack in 2010 and had a stent implanted.  He also underwent an SMA thrombectomy in April of

2014 by Dr. Michael Constanza and a right leg artery bypass in July of 2014, also by Dr. Constanza.

His UCTD is referenced in several of the records of Dr. Hom Neupane, who began treating the plaintiff in December of 2015. The notes of Dr. Neupane indicate that the condition is, quote, clinically stable on Plaquenil without side effects. That's at page 670 to 673 of the Administrative Transcript. Plaintiff's primary care provider is Dr. Patil Vandana. He initially saw the plaintiff on December 4, 2013. At the time, the plaintiff, at that initial encounter, asked that Dr. Vandana prepare a disability form on his behalf. The doctor declined.

He also has seen, as I indicated, Dr. Neupane at the Upstate Medical Center and has seen physicians at Upstate Orthopedics. He has also seen Dr. David Churchill at Hematology/Oncology Associates. He has been treated at Gastroenterology and Hepatology of Central New York and Upstate Comprehensive Pain Medicine. He was consultatively examined by Dr. Kalyani Ganesh on June 24, 2015. Dr. Ganesh issued a report with a medical source statement at Exhibit 2F.

The plaintiff has been prescribed various medications, including Nortriptyline, Lisinopril, Spiriva, Prednisone, Warfarin, Plaquenil, Coumadin, Oxycodone, Omeprazole, Nitroglycerine, and Plavix.

In terms of activities of daily living, plaintiff is able to cook, do laundry, do some walking of his dog, shower,

1  and dress.  Plaintiff is a smoker.  He has smoked for 30 years.
2  He has smoked between a half and two packs of cigarettes per day
3  against medical advice.  That's at page 52.  There's also
4  occasional marijuana use indicated in the records.
5          Procedurally, plaintiff applied for Title II
6  disability insurance benefits on February 9, 2015, and Title XVI
7  Supplemental Security Income benefits on February 25, 2015.  In
8  both, he alleged an onset date of January 1, 2013.  At page 240,
9  he claims the following in support of his application for
10 disability benefits:  COPD, heart attack, two crushed discs in
11 back, hypertension, hyperlipidemia, coronary artery disease,
12 peripheral artery disease, peripheral artery bypass in right leg
13 and abdomen.
14         A hearing was conducted by Administrative Law Judge
15 Roxanne Fuller on February 27, 2017, to address plaintiff's
16 application for benefits.  Judge Fuller issued a decision on
17 June 22, 2017, finding that plaintiff was not disabled at the
18 relevant times and therefore ineligible for the benefits sought.
19 That became a final determination of the agency on August 6,
20 2018, when the Social Security Administration Appeals Council
21 denied plaintiff's request for a review.
22         In her decision, ALJ Fuller applied the familiar
23 five-step sequential test for determining disability.  She noted
24 that the last date of insured status for the plaintiff was
25 December 31, 2015.  She then went on to find at step one that

1  plaintiff had not engaged in substantial gainful activities
2  since his alleged onset date of January 1, 2013.
3          At step two, she concluded that plaintiff suffers
4  from severe impairments that impose more than minimal
5  limitations on the ability to perform work-related functions,
6  including coronary artery disease, chronic obstructive pulmonary
7  disease or COPD, degenerative disc disease of the lumbar spine,
8  and carpal tunnel syndrome.
9          At step three, she concluded that plaintiff's
10 conditions do not meet or medical equal any of the listed
11 presumptively disabling conditions set forth in the
12 Commissioner's regulations, specifically considering listings
13 1.04, 3.02, and 4.04.
14         Next, the Administrative Law Judge concluded that
15 plaintiff can retain the residual functional capacity to perform
16 light work with various limitations -- one of which I didn't
17 understand -- that she can never perform foot control operation
18 with both hands; is limited to only occasional climbing of ramps
19 or stairs; only occasional climbing of ladders, ropes, or
20 scaffolds; is limited to occasional balancing, stooping,
21 crouching, kneeling, or crawling; is limited to frequent
22 fingering, that is fine manipulation with both hands; can
23 frequently handle objects, that is gross manipulation with both
24 hands; is limited to occasional exposure to moving mechanical
25 parts; occasional operation of a motor vehicle; and occasional

exposure to unprotected heights; is limited to occasional exposure to irritants, such as fumes, odors, dusts, and gases; and is limited to occasional exposure to poorly ventilated areas and occasional exposure to chemicals.

At step four, the Administrative Law Judge concluded that plaintiff is unable to perform his past relevant work due to the exertional requirements associated with that work.

At step five, she noted initially that if plaintiff were capable of performing a full range of light work, the Medical-Vocational Guidelines, or the grids, would direct a finding of no disability under Grid Rule 202.18.  After noting that there were additional limitations that required the testimony of a vocational expert, which was elicited at the hearing, ALJ Fuller concluded that plaintiff is capable of performing available work in the national economy, including as a cashier, a retail marker, and a dining room attendant, and was therefore not disabled.

As you know, my task is limited.  The test that I apply is extremely deferential.  The Court must determine whether correct legal principles were applied and the result is supported by substantial evidence. As the Second Circuit noted in *Brault v. Social Security Administration*, 683 F.3d 443, from the Second Circuit, 2012, it is an extremely exacting standard, more rigid than the clearly erroneous standard.  Substantial evidence is defined as such evidence as a reasonable mind might

1  accept as adequate to support a conclusion.  It was noted in
2  *Brault*, also, that this means that once an ALJ finds facts, they
3  can be rejected only if a reasonable factfinder would have to
4  conclude otherwise.
5           In this case, the contentions of the plaintiff are
6  limited to the failure at step two and beyond to consider
7  plaintiff's diagnosed UCTD and the effects that that had on the
8  analysis of plaintiff's subjective statements concerning his
9  symptoms, what we used to call the credibility analysis.  As a
10 backdrop, I note it is plaintiff's burden to show any
11 limitations resulting from diagnosed medical conditions through
12 the RFC and step four under *Poupore*.  And I'll also note that
13 the mere diagnosis of a condition is not the central focus of
14 the disability analysis, it is the resulting limitations that
15 flow from any diagnosed medical condition.
16          In this case, I understand UCTD, it is an autoimmune
17 disease not vastly different than fibromyalgia, and so it does
18 not always manifest itself in objective tests such as magnetic
19 resonance imaging testing and so forth.  The condition was
20 diagnosed by Dr. Neupane, who began treating plaintiff in
21 December of 2015.  And therefore after plaintiff made his
22 application for disability benefits and after Dr. Ganesh
23 examined the plaintiff in June of 2015, the plaintiff claims
24 error at step two.
25          It's clear that the governing regulations provide an

1  impairment or combination of impairments is not severe if it
2  does not significantly limit claimant's physical or mental
3  ability to do basic work activities, 20 C.F.R. Section
4  404.1521(a).  The section goes on to describe what is meant by
5  the phrase basic work activities to include the abilities and
6  aptitudes necessary to do most jobs.
7         The test at step two unquestionably is de minimis and
8  intended to weed out only truly the weakest of cases, but I'll
9  reiterate, the mere presence of a disease or impairment or
10 establishing that a person has been diagnosed or treated for a
11 disease or an impairment is not in and of itself sufficient to
12 establish a condition as severe, *Coleman v. Shalala*, 895 F.
13 Supp. 50 at 53 from the Southern District of New York, 1995.
14         In this case, it's clear that the plaintiff did
15 suffer from a condition, specifically UCTD.  It had been
16 diagnosed apparently -- the plaintiff attributes his pain, based
17 on medical records, to that condition.  I will assume for the
18 sake of argument that that is true, that the plaintiff has
19 sustained his burden of establishing not only the existence of
20 the condition, but that the pain that he experienced flowed from
21 that condition and, therefore, the failure to reference it at
22 step two was error.
23         I find, however, that the error was harmless.  It's
24 well established that if there is a finding of any impairment at
25 step two that is severe and the sequential analysis continues,

1  there's no error as long as the symptoms associated with the
2  condition are considered by the Administrative Law Judge.  In
3  this case, the plaintiff alleged that his back and leg pain
4  precluded work.  That's at pages 45 to 47 and 58 of the
5  Administrative Transcript.  The Administrative Law Judge
6  considered his allegations of pain.
7       The so-called credibility analysis or the two-step
8  analysis of plaintiff's subjective complaints was not infected
9  in this case because the Administrative Law Judge did find the
10 existence of medically determinable physical or mental
11 impairments that could reasonably be expected to produce the
12 pain or symptoms, even though it was not specifically
13 articulated to be the UCTD, and the Administrative Law Judge
14 went on to engage in the requisite analysis considering
15 plaintiff's treatment, conservative treatment, activities of
16 daily living, specifically referencing the medical records of
17 Dr. Vandana and -- who she refers to as Dr. Patil, but I think
18 that's his first name -- and also the consultative examination
19 of Dr. Ganesh.
20      The records of Dr. Neupane -- as I indicated
21 previously, the records from Dr. Neupane indicate that
22 plaintiff's UCTD is clinically stable on Plaquenil.  The ALJ
23 considered the use of Ibuprofen and no treatment for his back
24 prior to December of 2013, the fact that there isn't any
25 indication that he saw any specialists, X-rays and MRI results

 1  were modest.  I understand that that necessarily doesn't
 2  preclude a finding that UCTD could cause pain, but the exam of
 3  Dr. Ganesh and his findings with regard to pain, range of
 4  motion, and so forth, support the residual functional capacity
 5  and specifically the exertional requirements.
 6            The opinions of Dr. Ganesh were credited, although
 7  ALJ Fuller did add additional limitations beyond what Dr. Ganesh
 8  found in his medical statement to address plaintiff's COPD and
 9  carpal tunnel syndrome.  The Administrative Law Judge also
10  considered plaintiff's allegations of pain and fatigue at page
11  33 and 34 of the Administrative Transcript.
12            So I find that plaintiff failed to meet the stringent
13  standard of *Brault* and its progeny and that the RFC in this case
14  is supported by substantial evidence.  I find that the
15  Commissioner carried his burden at step five by relying on the
16  testimony of a vocational expert to determine the existence of
17  jobs in the national economy that plaintiff was cable of
18  performing.  I will therefore grant judgment on the pleadings to
19  the defendant and dismiss plaintiff's complaint.
20            This was a fascinating case and I appreciated the
21  oral arguments on both sides.  It was very helpful to the Court.
22  I hope you all have a good afternoon.
23            MS. MERRITT:  Thank you, your Honor.
24            MS. CRAWFORD:  Thank you, your Honor.
25            (Time noted:  11:54 a.m.)

```
 1
 2                CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5          I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6   NYRCR, Official U.S. Court Reporter, in and for the United
 7   States District Court for the Northern District of New York, DO
 8   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9   States Code, that the foregoing is a true and correct transcript
10   of the stenographically reported proceedings held in the
11   above-entitled matter and that the transcript page format is in
12   conformance with the regulations of the Judicial Conference of
13   the United States.
14
15          Dated this 13th day of March, 2020.
16
17       x _Hannah F. Cavanaugh_____
18         HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19         Official U.S. Court Reporter
20
21
22
23
24
25
```